# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

COURTNE MATTHEWS,          )
                               )
          **Plaintiff,**         )
                               )
**v.**                             )          **Case No.**
                               )
**EQUIPMENTSHARE.COM, INC.,**   )
**Serve Registered Agent:**      )
**CT Corporation System**        )
**5661 Telegraph Road, Suite 4B** )
**Saint Louis, MO 63129-4275**   )
                               )
          **Defendant.**      )

## COMPLAINT

COMES NOW Plaintiff Courtne Matthews, by and through the undersigned counsel of record, and for her Complaint against Defendant EquipmentShare.Com, Inc. hereby states and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for race and sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et seq.* and the Missouri Human Rights Act against Defendant for unlawfully discriminating against plaintiff Courtne Matthews in the terms and conditions of her employment on the basis of her race and sex and retaliating against her for reporting complaints based upon her protected class status.

## THE PARTIES

2. Plaintiff Courtne Matthews ("Plaintiff") resides in the State of Missouri.

3. Defendant EquipmentShare.Com, Inc. ("Defendant") is located in the State of Missouri and is responsible for the employment discrimination and retaliation of Plaintiff. Defendant can be

served through its Registered Agent at CT Corporation System, 5661 Telegraph Road, Suite 4B, Saint Louis, Missouri 63129-4275.

4. Defendant is an employer within the meaning of the same under the Missouri Human Rights Act and Title VII of the Civil Rights Acts of 1964.

## JURISDICTION AND VENUE

5. Original federal question jurisdiction over this suit is conferred on this Court by 28 U.S.C §§ 1331 as it is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200e *et seq*.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices occurred in and around Columbia, Boone County, Missouri, and where Plaintiff suffered the unlawful employment practices and the resultant damages.

7. All conditions precedent to jurisdiction have occurred or been complied, in that Plaintiff filed her administrative charges in a timely manner with the Equal Employment Opportunity Commission ("EEOC"). A copy of her Charge is attached hereto as Exhibit A.

8. The EEOC issued Plaintiff a Notice of Right to Sue and this lawsuit if filed within ninety (90) days of issuance. A copy of the Notice of Right to Sue attached as Exhibit B.

9. The Missouri Commission on Human Rights also issued Plaintiff a Notice of Right to Sue and this lawsuit if filed within ninety (90) days of issuance. A copy of the Right to Sue is attached as Exhibit C.

## GENERAL ALLEGATIONS

10. Plaintiff began her employment with Defendant in June of 2023 and was employed as a Manager/Director of Tech Support.

11. Plaintiff is an African-American homosexual female.

12. Throughout Plaintiff's tenure in this position, she was qualified for the position and performed her job duties more than satisfactorily.

2

13. Plaintiff believes that her gender and sexual identification resulted in her being subjected to a hostile work environment where she was retaliated against due to her race, sex and sexual identification ultimately leading to her constructive termination.

14. When Plaintiff first began working for Defendant in June of 2023, she was given the title of Manager of Tech Support.

15. Specifically, Plaintiff was the Manager of Defendant's Tier 2, T3 Support Team.

16. Plaintiff's direct supervisors were Derek Price, Assistant Director of Customer Support, and Tonya Locks, Director of Customer Support.

17. Prior to her employment, another senior employee, Jared Johanning, a Caucasian male, managed Plaintiff's Tier 2, T3 Support Team for Defendant.

18. Jared Johanning was moved to another position at approximately the same time Plaintiff started her employment with Defendant.

19. Jared Johanning continued to work in a role with Defendant that was senior to Plaintiff throughout her tenure with Defendant.

20. From the start of her work with Defendant, Jared Johanning continually interfered with Plaintiff's Tier 2, T3 Support Team, despite the fact that he no longer had managerial responsibility for the team.

21. Jared Johanning privately messaged members of Plaintiff's team and privately messaged Plaintiff repeatedly with unsolicited advice on how to run her team.

22. The aforementioned acts by Jared Johanning continued through November-December of 2023, when Jared Johanning sent Plaintiff a 3-page document pointing out his perceived deficiencies in her work and the work of her team.

23. Plaintiff reported the 3-page document to her supervisors, Tonya Locks and Derek Price, as harassment.

24. Plaintiff's supervisors escalated her complaint to Human Resources who asked Kris Dunn, a Caucasian male, Senior Director of T3 Sales, to instruct Jared Johanning to stop harassing Plaintiff and her team.

25. Unfortunately for Plaintiff, Kris Dunn, who was not her supervisor, had also been providing Plaintiff with unsolicited advice on how to do her job.

26. To Plaintiff's knowledge, nothing was done to halt Jared Johanning's harassment of her.

27. Plaintiff had previously complained to Tonya Locks that both Jared Johanning and Kris Dunn were interfering with her and her team.

28. Plaintiff never witnessed Jared Johanning or Kris Dunn micromanage other male managers/directors with Defendant in the same way they micromanaged Plaintiff and her team.

29. In April of 2024, the hostile work environment was only made worse for Plaintiff when CEO Willy Shlacks, a Caucasian male, moved the supervision of her team away from Tonya Locks and made Kris Dunn Plaintiff's direct supervisor.

30. Plaintiff's title also changed at this time to: Director of Tech Support.

31. During June/July/August of 2024, Plaintiff was tasked with building her team including a new onboarding and implementation team.

32. As a result of the creation of this new team under Plaintiff's supervision, two new supervisor positions were posted.

33. Plaintiff, along with multiple other managers and supervisors, interviewed, vetted and recommended for approval to CEO Willy Shlacks an individual for one of the supervisor positions.

34. Despite never meeting the candidate, CEO Shlacks immediately refused to hire the person, stating that the person would destroy the team and had tricked the group.

35. CEO Shlacks' decision was entirely based on the candidate's DISC profile and his decision left Plaintiff with new responsibilities and no team leadership to implement them.

4

36. Plaintiff was assigned new work responsibilities, but given no support by Defendant.

37. In addition during the time frame, the T3 billing team of 6 employees was moved under Plaintiff's direct report.

38. By September of 2024, the lack of direction and resources from Plaintiff's supervisors at T3 had overwhelmed her to the point that she sought medical attention from her doctor, who prescribed anti-anxiety medications.

39. At approximately this time, Defendant announced that there would be a company-wide reorganization.

40. As part of the reorganization, Plaintiff was to meet with Jared Johanning, Kris Dunn, and Jesse Johnsey, all Caucasian males, to decide which 7 employees from T3 would be laid off as part of the reorganization.

41. Staff rankings had been performed and provided to Plaintiff, Jared Johanning, Kris Dunn, and Jesse Johnsey prior to the meeting.

42. Despite the staff rankings showing Plaintiff had the least amount of low performers on her team, Plaintiff was presented with a spreadsheet at the meeting listing the 5 employees who reported to her that would be laid off.

43. Jared and Jesse's, the Caucasian males', teams only had 1 employee each being eliminated.

44. Plaintiff challenged this decision, but ultimately the layoffs were not changed.

45. Also, during September of 2024, Plaintiff learned from Kris Dunn during one of their then weekly one-on-one meetings that Jared Johanning and Jesse Johnsey both had stock options and that Kris had fought to get Jesse's stock options for him.

46. When Plaintiff asked Kris why she did not get stock option since she was also a director, Kris said that Plaintiff should talk to Sarah Munns in Human Resources about her request.

47.     Plaintiff did speak with Ms. Munns and she directed Plaintiff back to Kris Dunn as the only person who could request that Plaintiff be granted stock options.

48.     Plaintiff relayed this information to Kris Dunn who told her he would request a stock option that would allow her to purchase 1,000 shares.

49.     Plaintiff never received or heard anything further about stock options while she was employed by Defendant leading her to believe that nothing was requested.

50.     On October 1 and 2, 2024, Plaintiff met with the 5 subordinates that she was instructed to terminate and did so by reading from a script provided to her by Human Resources.

51.     Kris Dunn and Human Resources listened in on these calls.

52.     On October 15, 2024, Plaintiff received an email informing her that her access to Defendant's certain computer systems was being revoked.

53.     The following week, Plaintiff was not able to work from October 21-23 due to her wife suffering a miscarriage.

54.     Plaintiff communicated with Kris Dunn about what was occurring in her private life, he asked if there was anything he could do and Plaintiff responded by asking for grace if she wasn't 100% in the next few days.  Kris responded by indicating that he understood.

55.     Plaintiff returned to work on October 24, 2024 and was informed by one of her subordinates that she felt like something was going on indicating that she and her team would be moved under Jared Johanning in the near future.

56.     On October 28, 2024, Kris Dunn sent a message to a subordinate and Plaintiff regarding the subordinate and Plaintiff's team's performance.

57.     Plaintiff immediately messaged Kris Dunn to ask for a meeting with him to discuss the issues with the subordinate and her team.

6

58. On October 29, 2024, Plaintiff received a lengthy message regarding the reorganization that she was just then being told was happening.

59. On October 30, 2024, Plaintiff met with Kris Dunn and told him that while she did not completely agree with the reorganization plan, Plaintiff would follow his direction and lead in implementing it.

60. Kris Dunn told Plaintiff that November 11, 2024 would be the "transition day" for the reorganization and that there would be a meeting that day for Plaintiff and the other impacted employees.

61. On November 11, 2024, the "transition day" meeting occurred, but Plaintiff was not invited or a part of the meeting.

62. When Plaintiff later asked Kris Dunn why she was not part of the meeting, he apologized for forgetting to invite/add her.

63. Following the meeting, Kris Dunn asked Plaintiff to provide him with support processing changes for the reorganization and promised to provide her with materials to assist in this task.

64. Plaintiff did not receive the promised documentation from Kris Dunn.

65. Plaintiff messaged Kris Dunn with a plan to flatten our support teams and asked about future raises for her remaining team members.

66. Kris Dunn responded by telling Plaintiff no one, including Plaintiff, on her team deserved raises and that it was "fish or cut bait time."

67. For three weeks following the above meeting, Kris Dunn cancelled Plaintiff's weekly one-on-one meetings without explanation and began to give direction to her subordinates without Plaintiff's knowledge.

68. In December of 2024, Plaintiff again went to my doctor with complaints of increasing anxiety related to her work with Defendant and her anxiety medications were increased by my doctor.

7

69. On December 9, 2024, Plaintiff received a document from Kris Dunn that she assumed was the long promised and awaited support process change documents, but it was not.

70. Instead, Plaintiff received a memorandum from Kris Dunn that was critical of her leadership skills and threatened a "Record of Conversation" with Human Resources if she did not rectify his concerns.

71. Plaintiff messaged Kris Dunn and Human Resources to schedule a call to discuss Kris' memorandum.

72. A meeting was held on December 10, 2024, in which Human Resources encouraged Plaintiff and Kris Dunn to continue talking and with their weekly one-on-one meetings.

73. That day Plaintiff received a message from Kris Dunn cancelling their next scheduled meeting for the next day, December 11, 2024.

74. Plaintiff messaged Human Resources about the cancellation of the meeting and they in turn messaged Kris Dunn encouraging him to keep the meeting as scheduled.

75. On December 11, 2024, Plaintiff was present and ready for her scheduled meeting with Kris Dunn, but he failed to show up.

76. Plaintiff then messaged ES' System Administrator to inquire as to why her access and permissions had been taken away in October of 2024.

77. Plaintiff was informed that she was the only director whose permissions were lowered.

78. Plaintiff learned that she was singled out among Defendant's Directors in having her permissions removed.

79. Kris Dunn continued to fail to keep meetings with Plaintiff to provide direction as to her role and her team's role with Defendant.

80. Plaintiff was constructively discharged by Defendant.

8

81. At all times relevant herein, Derek Price was acting as an agent, servant, and employee of Defendant.

82. At all times relevant herein, Tonya Locks was acting as an agent, servant, and employee of Defendant.

83. At all times relevant herein, Jared Johanning was acting as an agent, servant, and employee of Defendant.

84. At all times relevant herein, Kris Dunn was acting as an agent, servant, and employee of Defendant.

85. At all times relevant herein, CEO Willy Shlacks was acting as an agent, servant, and employee of Defendant.

86. At all times relevant herein, Jesse Johnsey was acting as an agent, servant, and employee of Defendant.

87. At all times relevant herein, Sarah Munns was acting as an agent, servant, and employee of Defendant.

88. Throughout Plaintiff's employment, the employees of Defendant listed herein failed to prevent or correct the harassment and discriminatory behavior from occurring and instead retaliated against Plaintiff.

89. At all times relevant herein, the above-named individuals were agents, servants and employees of Defendant and were at all times acting within the scope and course of their agency and employment, or their actions were expressly authorized and ratified by Defendant. Therefore, Defendant is liable for the actions of said persons and/or perpetrators under all theories pled herein.

9

**COUNT I:**
**Race Discrimination-Title VII**
**Against Defendant**

90. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

91. Defendant discriminated against Plaintiff in the terms and conditions of her employment.

92. Defendant's conduct constitutes intentional discrimination on the basis of race, with malice and disregard of Plaintiff's rights.

93. Defendant's conduct constitutes disparate treatment and intentional discrimination of Plaintiff based on race.

94. Management level employees perpetuated the discrimination Plaintiff based on Plaintiff's race.

95. In addition, management level employees knew or should have known of the discrimination based on Plaintiff's race but failed to address the discrimination and further failed to implement effective and appropriate procedures to stop the discrimination.

96. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future loss of wages and benefits, lost value of anticipated retirement benefits, detrimental job record, career damage, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other nonpecuniary losses.

97. The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff and others similarly situated, and reflected a conscious indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages.

98. Plaintiff is entitled to recover all of her costs, expenses, expert witness fees and attorneys' fees incurred in this matter as well as other appropriate, including equitable, relief.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual damages, compensatory and punitive damages, all costs, expenses and attorneys' fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

**COUNT II:**
**Retaliation – Title VII**
**Against Defendant**

99.    Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

100.    Plaintiff engaged in protected activity by reporting and opposing conduct made unlawful by Title VII as described above, including complaining of race discrimination to which she was subjected.

101.    Plaintiff suffered adverse employment action in that she was terminated from employment after she complained about racial discrimination.

102.    Management level employees perpetuated the discrimination based on Plaintiff's race.

103.    In addition, management level employees knew or should have known of the discrimination based on Plaintiff's race but failed to address the discrimination and further failed to implement effective and appropriate procedures to stop the discrimination.

104.    As a result of and in retaliation for engaging in the protected activities described above, Plaintiff was subjected to adverse employment actions.

105.    In retaliation for Plaintiff's protected activities, Defendant constructively discharged Plaintiff.

106.    There is a causal connection between Plaintiff's exercise of protected activity and her constructive discharge.

107. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future loss of wages and benefits, lost value of anticipated retirement benefits, detrimental job record, career damage, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other nonpecuniary losses.

108. The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff and others similarly situated, and reflected a conscious indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages.

109. Plaintiff is entitled to recover all of her costs, expenses, and attorneys' fees incurred in this matter as well as other appropriate, including equitable relief.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual damages, compensatory and punitive damages, all costs, expenses, expert witness fees and attorneys' fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

**COUNT III:**
**Sex Discrimination-Title VII**
**Against Defendant**

110. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

111. Defendant discriminated against Plaintiff in the terms and conditions of her employment.

112. Defendant's conduct constitutes intentional discrimination on the basis of sex, with malice and disregard of Plaintiff's rights.

113. Defendant's conduct constitutes disparate treatment and intentional discrimination of Plaintiff based on sex.

114. Male staff perpetuated the discrimination and sexually harassed Plaintiff based on Plaintiff's sex.

115. In addition, management level employees knew or should have known of the discrimination based on Plaintiff's sex but failed to address the discrimination and further failed to implement effective and appropriate procedures to stop the discrimination.

116. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future loss of wages and benefits, lost value of anticipated retirement benefits, detrimental job record, career damage, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other nonpecuniary losses.

117. The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff and others similarly situated, and reflected a conscious indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages.

118. Plaintiff is entitled to recover all of her costs, expenses, expert witness fees and attorneys' fees incurred in this matter as well as other appropriate, including equitable, relief.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual damages, compensatory and punitive damages, all costs, expenses and attorneys' fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

**COUNT IV:**
**Retaliation – Title VII**
**Against Defendant**

119. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

13

120.    Plaintiff engaged in protected activity by reporting and opposing conduct made unlawful by Title VII as described above, including complaining of sex discrimination and harassment to which she was subjected.

121.    Plaintiff suffered adverse employment action in that she was terminated from employment after she complained about sexual discrimination and harassment.

122.    Management level employees perpetuated the discrimination based on Plaintiff's sex.

123.    In addition, management level employees knew or should have known of the discrimination based on Plaintiff's sex but failed to address the discrimination and further failed to implement effective and appropriate procedures to stop the discrimination.

124.    As a result of and in retaliation for engaging in the protected activities described above, Plaintiff was subjected to adverse employment actions.

125.    In retaliation for Plaintiff's protected activities, Defendant constructively discharged Plaintiff.

126.    There is a causal connection between Plaintiff's exercise of protected activity and her constructive discharge.

127.    As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future loss of wages and benefits, lost value of anticipated retirement benefits, detrimental job record, career damage, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other nonpecuniary losses.

128.    The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff and others similarly situated, and reflected a conscious indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages.

14

129. Plaintiff is entitled to recover all of her costs, expenses, and attorneys' fees incurred in this matter as well as other appropriate, including equitable relief.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual damages, compensatory and punitive damages, all costs, expenses, expert witness fees and attorneys' fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

### COUNT V:
### Violation of the Missouri Human Rights Act – Race Discrimination
### R.S.Mo. § 213.010, *et seq.* Against Defendant

130. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

131. The actions of Defendant constitute unwelcome and discriminatory conduct.

132. Plaintiff's race was a factor in the discriminatory conduct she experienced and suffered.

133. The discriminatory conduct included, but was not limited to, unwanted racial discrimination by Defendant's employees as described herein.

134. Plaintiff's terms and conditions of employment were adversely affected as a result of Defendant's conduct.

135. Defendant's conduct caused Plaintiff degradation, humiliation, anxiety, and emotional distress.

136. The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

137. Management level employees perpetuated the discrimination based on Plaintiff's race.

138. In addition, management level employees knew or should have known of the discrimination based on Plaintiff's race but failed to address the discrimination and further failed to implement effective and appropriate procedures to stop the discrimination.

15

139. The actions and conduct set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant, for a finding that she has been subjected to unlawful discrimination as prohibited by R.S.Mo. § 213.010 *et seq.*; for an award of compensatory and punitive damages, for her costs expended, for her reasonable attorneys' fees and for such other relief as this Court deems just and proper.

<u>COUNT VI:</u>
<u>Violation of the Missouri Human Rights Act-Retaliation</u>
<u>Against Defendants</u>

140. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

141. Defendant's conduct included, but was not limited to, terminating Plaintiff's employment after she reported racial discrimination she experienced working with Defendant.

142. Plaintiff's terms and conditions of employment were adversely affected as a result of Defendant's conduct.

143. Defendant's conduct caused Plaintiff degradation, humiliation, anxiety and emotional distress.

144. The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

145. As a proximate result of Defendant's acts as aforesaid, Plaintiff was retaliated against and has suffered constructive discharge of her employment.

146. Management level employees perpetuated the retaliation against Plaintiff.

16

147. In addition, management level employees knew or should have known of the retaliation against Plaintiff, but failed to address the retaliation and further failed to implement effective and appropriate procedures to stop said retaliation.

148. The actions and conduct set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant, for a finding that she has been subjected to unlawful retaliation as prohibited by Mo.Rev.Stat. 213.010 *et seq*., for an award of compensatory and punitive damages, for her costs expended, for her reasonable attorneys' fees and for such other relief as this Court deems just and proper.

**COUNT VII:**
**Violation of the Missouri Human Rights Act – Sex Discrimination**
**R.S.Mo. § 213.010, *et seq.* Against Defendant**

149. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

150. The actions of Defendant constitute unwelcome and discriminatory conduct.

151. Plaintiff's sex was a factor in the discriminatory conduct she experienced and suffered.

152. The discriminatory conduct included, but was not limited to, those actions and inactions by Defendant, acting by and through its agents, as described herein, without limitation, in paragraphs 10 through 89.

153. Plaintiff's terms and conditions of employment were adversely affected as a result of Defendant's conduct.

154. Defendant's conduct caused Plaintiff degradation, humiliation, anxiety, and emotional distress.

17

155. The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

156. Management level employees perpetuated the discrimination based on Plaintiff's sex.

157. In addition, management level employees knew or should have known of the discrimination based on Plaintiff's sex but failed to address the discrimination and further failed to implement effective and appropriate procedures to stop the discrimination.

158. The actions and conduct set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant, for a finding that she has been subjected to unlawful discrimination as prohibited by R.S.Mo. § 213.010 *et seq*.; for an award of compensatory and punitive damages, for her costs expended, for her reasonable attorneys' fees and for such other relief as this Court deems just and proper.

**COUNT VIII:**
**Violation of the Missouri Human Rights Act-Retaliation**
**Against Defendant**

159. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

160. Defendant's conduct included, but was not limited to, the constructive discharge of Plaintiff's employment.

161. Plaintiff's terms and conditions of employment were adversely affected as a result of Defendant's conduct.

162. Defendant's conduct caused Plaintiff degradation, humiliation, anxiety and emotional distress.

163. The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

164. As a proximate result of Defendant's acts as aforesaid, Plaintiff was retaliated against and has suffered constructive discharge of her employment.

165. Management level employees perpetuated the retaliation against Plaintiff.

166. In addition, management level employees knew or should have known of the retaliation against Plaintiff, but failed to address the retaliation and further failed to implement effective and appropriate procedures to stop said retaliation.

167. The actions and conduct set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant, for a finding that she has been subjected to unlawful retaliation as prohibited by Mo.Rev.Stat. 213.010 *et seq*., for an award of compensatory and punitive damages, for her costs expended, for her reasonable attorneys' fees and for such other relief as this Court deems just and proper.

### COUNT IX:
### HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF RSMo. § 213.010 *et seq*.
### Against Defendant

168. Plaintiff incorporates and adopts by reference the preceding paragraphs as though fully set forth herein.

169. During Plaintiff's employment with Defendant, Defendant subjected Plaintiff to outrageous, extreme, atrocious, intolerable, severe and unwelcomed conduct based on Plaintiff's sex and race and subsequent retaliation.

170.  At all times relevant herein, Defendant's discrimination against Plaintiff based on Plaintiff's race and sex was outrageous, extreme, atrocious, intolerable, severe, unwelcomed, and objected to by Plaintiff.

171.  Defendant's discriminatory conduct against Plaintiff based on Plaintiff's race and sex, was sufficiently outrageous, extreme, atrocious, intolerable, severe, and pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile and/or abusive.

172.  Plaintiff's race and sex was a motivating factor in Defendant's actions toward and adverse employment decisions relating to Plaintiff.

173.  Defendant's actions toward and adverse employment decisions relating to Plaintiff had the purpose and effect of unreasonably interfering with Plaintiff's ability to perform her job and duties.

174.  Defendant knew or should have known of the outrageous, extreme, atrocious, intolerable, severe, pervasive, discriminatory conduct against Plaintiff based on Plaintiff's race and sex, as Plaintiff expressed her concerns of said conduct to Defendant.

175.  Defendant failed to exercise reasonable care to prevent and/or promptly correct the outrageous, extreme, atrocious, intolerable, severe, and pervasive conduct by Defendant, including but not limited to, one or both of the following: a.  Failing to make good-faith efforts to establish and enforce policies to prevent illegal discrimination against its employees through age and/or retaliation; and/or b.  Failing to properly train and/or otherwise inform their supervisors and employees concerning their duties and obligations under civil rights laws, including the Missouri Human Rights Act.

176.  Plaintiff's race and sex, when repeatedly reporting the discrimination and harassment against Plaintiff by Defendant, including but not limited to, through Defendant's agents, owners, supervisors and/or employees, actually played a role and was a determinative influence in disparate treatment of Plaintiff and the tangible employment actions taken against her by Defendant.

177. Through Defendant's conduct, as described herein, Defendant violated RSMo. § 213.055.

178. As a direct and proximate result of Defendant's outrageous, extreme, atrocious, and intolerable conduct and/or omissions, as outlined herein, and, in violation of RSMo. § 213.055, Plaintiff suffered intentional discrimination at the hands of and by Defendant during the course of her employment with Defendant.

179. As a direct and proximate result of Defendant's outrageous, extreme, atrocious, and intolerable conduct and/or omissions, as outlined herein, Plaintiff has been, and continues to suffer monetary and non-monetary damages.

180. As a direct and proximate result of Defendant's outrageous, extreme, atrocious, and intolerable conduct and/or omissions, Plaintiff has and continues to suffer, garden variety emotional distress and other compensatory damages.

181. By failing to take prompt and effective remedial action, Defendant effectively condoned, ratified, authorized, aided, abetted, incited, compelled, and/or coerced and/or attempted to do so the discrimination against Plaintiff based on Plaintiff's race and sex and retaliation against Plaintiff.

182. Defendant's outrageous, extreme, atrocious, severe, and intolerable conduct was willful, wanton, and malicious and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages. in an amount sufficient to punish Defendant and/or to deter them and others from like conduct in the future, as provided for under law.

183. Plaintiff is entitled to recover reasonable attorneys' fees from Defendant, as provided for under the MHRA.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant, for a finding that she has been subjected to unlawful retaliation as prohibited by Mo.Rev.Stat. 213.010 *et seq*., for

21

an award of compensatory and punitive damages, for her costs expended, for her reasonable attorneys' fees and for such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests trial by jury of all issues triable by jury.

Respectfully submitted,

**LAUREN ALLEN, LLC**

By: */s/ Lauren Perkins Allen*
Lauren Perkins Allen, #49845MO
4717 Grand Avenue, Suite 130
Kansas City, Missouri 64112
Telephone: 816.877.8120
Facsimile: 816.817.1120
Email: lpa@laurenallenllc.com

Erik P. Klinkenborg    #49670
1236 Swift Avenue
North Kansas City, MO 64116
Phone: (816) 472-4440
Fax:     (816) 472-4442
Email: erik@northkclaw.com

**ATTORNEYS FOR PLAINTIFF**

22

23

24